JOSEPH T. MCNALLY
Acting United States Attorney
DAVID T. RYAN
Chief, National Security Division
MAXWELL COLL (Cal. Bar No. 312651)
ALEXANDER S. GORIN (Cal. Bar No. 326235)
Assistant United States Attorneys
Cyber & Intellectual Property Crimes Section
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Corporate and Securities Fraud Strike Force
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-1785/2429
     Facsimile:  (213) 894-0141
     E-mail:     maxwell.coll@usdoj.gov
                 nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

3/17/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

            Plaintiff,

                 v.

SHENGSHENG HE,
     aka "Adam,"

            Defendant.

No. CR 2:25-CR-00175-PA

PLEA AGREEMENT FOR DEFENDANT
SHENGSHENG HE

1.    This constitutes the plea agreement between SHENGSHENG HE ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") and the United States Department of Justice, Computer Crime and Intellectual Property Section ("CCIPS" and together with the USAO, the "United States") in the above-captioned case.  This agreement is limited to the USAO and CCIPS and

1  cannot bind any other federal, state, local, or foreign prosecuting,

2  enforcement, administrative, or regulatory authorities.

3                    DEFENDANT'S OBLIGATIONS

4       2.   Defendant agrees to:

5            a.   Give up the right to indictment by a grand jury and,

6  at the earliest opportunity requested by the USAO and CCIPS and

7  provided by the Court, appear and plead guilty to a single-count

8  information in the form attached to this agreement as Exhibit B or a

9  substantially similar form, which charges defendant with conspiracy

10 to commit an offense against the United States, in violation of 18

11 U.S.C. § 371, to wit, operation of an unlicensed money transmitting

12 business, in violation of 18 U.S.C. §§ 1960(b)(1)(B) and

13 1960(b)(1)(C).

14           b.   Not contest the Factual Basis agreed to in this

15 agreement.

16           c.   Abide by all agreements regarding sentencing contained

17 in this agreement.

18           d.   Appear for all court appearances, surrender as ordered

19 for service of sentence, obey all conditions of any bond, and obey

20 any other ongoing court order in this matter.

21           e.   Not commit any crime; however, offenses that would be

22 excluded for sentencing purposes under United States Sentencing

23 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

24 within the scope of this agreement.

25           f.   Be truthful at all times with the United States

26 Probation and Pretrial Services Office and the Court.

27

28

                              2

1         g.   Pay the applicable special assessment at or before the

2  time of sentencing unless defendant has demonstrated a lack of

3  ability to pay such assessments.

4         h.   Defendant agrees that any and all criminal debt

5  ordered by the Court will be due in full and immediately.  The

6  government is not precluded from pursuing, in excess of any payment

7  schedule set by the Court, any and all available remedies by which to

8  satisfy defendant's payment of the full financial obligation,

9  including referral to the Treasury Offset Program.

10         i.   Complete the Financial Disclosure Statement on a form

11  provided by the United States and, within 30 days of defendant's

12  entry of a guilty plea, deliver the signed and dated statement, along

13  with all of the documents requested therein, to the United States by

14  either email at usacac.FinLit@usdoj.gov (preferred) or mail to the

15  USAO Financial Litigation Section at 300 North Los Angeles Street,

16  Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's

17  ability to pay criminal debt shall be assessed based on the completed

18  Financial Disclosure Statement and all required supporting documents,

19  as well as other relevant information relating to ability to pay.

20         j.   Authorize the United States to obtain a credit report

21  upon returning a signed copy of this plea agreement.

22         k.   Consent to the United States inspecting and copying

23  all of defendant's financial documents and financial information held

24  by the United States Probation and Pretrial Services Office.

25                  THE UNITED STATES' OBLIGATIONS

26     3.   The United States agrees to:

27         a.   Not contest the Factual Basis agreed to in this

28  agreement.

1          b.    Abide by all agreements regarding sentencing contained

2   in this agreement.

3          c.    At the time of sentencing, provided that defendant

4   demonstrates an acceptance of responsibility for the offense up to

5   and including the time of sentencing, recommend a two-level reduction

6   in the applicable Sentencing Guidelines offense level, pursuant to

7   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

8   additional one-level reduction if available under that section.

9                          NATURE OF THE OFFENSE

10      4.    Defendant understands that for defendant to be guilty of

11  the crime charged in the single-count Information, that is,

12  conspiracy to operate an unlicensed money transmitting business, in

13  violation of Title 18, United States Code, Section 371, the following

14  must be true:  (1) there was an agreement between two or more persons

15  to commit at least one crime as charged in the information, to wit:

16  operation of an unlicensed money transmitting business, in violation

17  of Title 18, United States Code, Sections 1960(a), (b)(1)(B), and

18  (b)(1)(C); (2) defendant became a member of the conspiracy knowing of

19  at least one of its objects and intending to help accomplish it; and

20  (3) one of the members of the conspiracy performed at least one overt

21  act for the purpose of carrying out the conspiracy.

22      5.    Defendant understands that for defendant to be guilty of

23  the objects of the conspiracy, that is, operation of an unlicensed

24  money transmitting business, in violation of Title 18, United States

25  Code, Sections 1960(a), (b)(1)(B), and (b)(1)(C), the following must

26  be true: (1) defendant knowingly conducted, controlled, managed,

27  supervised, directed, or owned all or part of a money transmitting

28  business affecting interstate or foreign commerce; and (2) the

4

1  business was unlicensed in that it failed to comply with the money

2  transmitting business regulation requirements under Title 31, United

3  States Code, Section 5330 and the regulations promulgated under that

4  section; or otherwise involved the transportation or transmission of

5  funds that were known to the defendant to have been derived from a

6  criminal offense or were intended to be used to promote or support

7  unlawful activity. A money transmitting business transfers funds on

8  behalf of the public by any and all means including but not limited

9  to transfers within the United States or to locations abroad by wire,

10  check, draft, facsimile, or courier. A defendant does not need

11  specific knowledge of the registration requirements to violate Title

12  18, United States Code, Section 1960.

13  <u>PENALTIES AND RESTITUTION</u>

14  6. Defendant understands that the statutory maximum sentence

15  that the Court can impose for a violation of Title 18, United States

16  Code, Section 371, is: five years' imprisonment; a three-year period

17  of supervised release; a fine of $250,000 or twice the gross gain or

18  gross loss resulting from the offense, whichever is greatest; and a

19  mandatory special assessment of $100.

20  7. Defendant understands that defendant will be required to

21  pay full restitution to the victims of the offense to which defendant

22  is pleading guilty. Defendant agrees that, in return for the United

23  States' compliance with its obligations under this agreement, the

24  Court may order restitution to persons other than the victims of the

25  offense to which defendant is pleading guilty and in amounts greater

26  than those alleged in the count to which defendant is pleading

27  guilty. In particular, defendant agrees that the Court may order

28  restitution to any victim of any of the following for any losses

5

suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.  The parties agree that the applicable amount of restitution is at least $7,560,014.  The parties agree that the amount of restitution could change based on facts that come to the attention of the parties prior to sentencing.

8.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

1    10.    Defendant and his counsel have discussed the fact that, and

2  defendant understands that, if defendant is not a United States

3  citizen, the conviction in this case makes it practically inevitable

4  and a virtual certainty that defendant will be removed or deported

5  from the United States.    Defendant may also be denied United States

6  citizenship and admission to the United States in the future.

7  Defendant understands that while there may be arguments that

8  defendant can raise in immigration proceedings to avoid or delay

9  removal, removal is presumptively mandatory and a virtual certainty

10  in this case.    Defendant further understands that removal and

11  immigration consequences are the subject of a separate proceeding and

12  that no one, including his attorney or the Court, can predict to an

13  absolute certainty the effect of his conviction on his immigration

14  status.    Defendant nevertheless affirms that he wants to plead guilty

15  regardless of any immigration consequences that his plea may entail,

16  even if the consequence is automatic removal from the United States.

17                                FACTUAL BASIS

18    11.    Defendant admits that defendant is, in fact, guilty of the

19  offense to which defendant is agreeing to plead guilty.    Defendant

20  and the USAO and CCIPS agree to the Factual Basis provided in Exhibit

21  A hereto and agree that this Factual Basis is sufficient to support

22  pleas of guilty to the charge described in this agreement and to

23  establish the Sentencing Guidelines factors set forth in paragraph 13

24  below but is not meant to be a complete recitation of all facts

25  relevant to the underlying criminal conduct or all facts known to

26  either party that relate to that conduct.

27

28

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. § 2S1.1(a)(2)<br>U.S.S.G. § 2X1.1(a) |
| Laundered Funds More Than $25,000,000 | +22 | U.S.S.G. § 2B1.1(b)(1)(L) |
| Business of Laundering Funds | +4 | U.S.S.G. § 2S1.1(b)(2)(C) |

Defendant and the United States reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the

1    Sentencing Guidelines based on the factors set forth in 18 U.S.C.

2    § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

3                    WAIVER OF CONSTITUTIONAL RIGHTS

4        16.    Defendant understands that by pleading guilty, defendant

5    gives up the following rights:

6            a.    The right to persist in a plea of not guilty.

7            b.    The right to a speedy and public trial by jury.

8            c.    The right to be represented by counsel -- and if

9    necessary have the Court appoint counsel -- at trial.   Defendant

10   understands, however, that, defendant retains the right to be

11   represented by counsel -- and if necessary have the Court appoint

12   counsel -- at every other stage of the proceeding.

13           d.    The right to be presumed innocent and to have the

14   burden of proof placed on the government to prove defendant guilty

15   beyond a reasonable doubt.

16           e.    The right to confront and cross-examine witnesses

17   against defendant.

18           f.    The right to testify and to present evidence in

19   opposition to the charges, including the right to compel the

20   attendance of witnesses to testify.

21           g.    The right not to be compelled to testify, and, if

22   defendant chose not to testify or present evidence, to have that

23   choice not be used against defendant.

24           h.    Any and all rights to pursue any affirmative defenses,

25   Fourth Amendment or Fifth Amendment claims, and other pretrial

26   motions that have been filed or could be filed.

27

28

1                 WAIVER OF RETURN OF DIGITAL DATA

2     17.  Understanding that the government has in its possession

3 digital devices and/or digital media seized from defendant, defendant

4 waives any right to the return of digital data contained on those

5 digital devices and/or digital media and agrees that if any of these

6 digital devices and/or digital media are returned to defendant, the

7 government may delete all digital data from those digital devices

8 and/or digital media before they are returned to defendant.

9                     WAIVER OF VENUE

10     18.  Having been fully advised by defendant's attorney regarding

11 the requirements of venue with respect to the offense to which

12 defendant is pleading guilty, to the extent the offense to which

13 defendant is pleading guilty were committed, begun, or completed

14 outside the Central District of California, defendant knowingly,

15 voluntarily, and intelligently waives, relinquishes, and gives up:

16 (a) any right that defendant might have to be prosecuted only in the

17 district where the offense to which defendant is pleading guilty were

18 committed, begun, or completed; and (b) any defense, claim, or

19 argument defendant could raise or assert based upon lack of venue

20 with respect to the offense to which defendant is pleading guilty.

21           WAIVER OF APPEAL OF CONVICTION

22     19.  Defendant understands that, with the exception of an appeal

23 based on a claim that defendant's guilty plea was involuntary, by

24 pleading guilty defendant is waiving and giving up any right to

25 appeal defendant's conviction on the offense to which defendant is

26 pleading guilty.  Defendant understands that this waiver includes,

27 but is not limited to, arguments that the statute to which defendant

28 is pleading guilty is unconstitutional, and any and all claims that

1  the statement of facts provided herein is insufficient to support

2  defendant's plea of guilty.

3  <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

4      20.  Defendant agrees that, provided the Court imposes a total

5  term of imprisonment of no more than 60 months, defendant gives up

6  the right to appeal all of the following: (a) the procedures and

7  calculations used to determine and impose any portion of the

8  sentence; (b) the term of imprisonment imposed by the Court; (c) the

9  fine imposed by the Court, provided it is within the statutory

10 maximum; (d) to the extent permitted by law, the constitutionality or

11 legality of defendant's sentence, provided it is within the statutory

12 maximum; (e) the term of probation or supervised release imposed by

13 the Court, provided it is within the statutory maximum; and (f) any

14 of the following conditions of probation or supervised release

15 imposed by the Court: the conditions set forth in Second Amended

16 General Order 20-04 of this Court; the drug testing conditions

17 mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

18 drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19     21.  The United States agrees that, provided (a) all portions of

20 the sentence are at or below the statutory maximum specified above

21 and (b) the Court imposes a term of imprisonment of no less than 60

22 months, the United States gives up its right to appeal any portion of

23 the sentence, with the exception that the United States reserves the

24 right to appeal that the United States reserves the right to

25 appeal the amount of restitution ordered if that amount is less than

26 $36,905,259.

27     22.  Defendant also gives up any right to bring a post-

28 conviction collateral attack on the conviction or sentence, including

1 any order of restitution, except a post-conviction collateral attack

2 based on a claim of ineffective assistance of counsel, a claim of

3 newly discovered evidence, or an explicitly retroactive change in the

4 applicable Sentencing Guidelines, sentencing statutes, or statutes of

5 conviction. Defendant understands that this waiver includes, but is

6 not limited to, arguments that the statute to which defendant is

7 pleading guilty is unconstitutional, and any and all claims that the

8 statement of facts provided herein is insufficient to support

9 defendant's plea of guilty.

10                    RESULT OF WITHDRAWAL OF GUILTY PLEA

11         23.    Defendant agrees that if, after entering a guilty plea

12 pursuant to this agreement, defendant seeks to withdraw and succeeds

13 in withdrawing defendant's guilty plea on any basis other than a

14 claim and finding that entry into this plea agreement was

15 involuntary, then (a) the United States will be relieved of all of

16 its obligations under this agreement; and (b) should the United

17 States choose to pursue any charge that was either dismissed or not

18 filed as a result of this agreement, then (i) any applicable statute

19 of limitations will be tolled between the date of defendant's signing

20 of this agreement and the filing commencing any such action; and

21 (ii) defendant waives and gives up all defenses based on the statute

22 of limitations, any claim of pre-indictment delay, or any speedy

23 trial claim with respect to any such action, except to the extent

24 that such defenses existed as of the date of defendant's signing this

25 agreement.

26

27

28

1        RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2        24.  Defendant agrees that if the count of conviction is

3   vacated, reversed, or set aside, both the United States and defendant

4   will be released from all their obligations under this agreement.

5        EFFECTIVE DATE OF AGREEMENT

6        25.  This agreement is effective upon signature and execution of

7   all required certifications by defendant, defendant's counsel, and an

8   Assistant United States Attorney.

9        BREACH OF AGREEMENT

10       26.  Defendant agrees that if defendant, at any time after the

11  signature of this agreement and execution of all required

12  certifications by defendant, defendant's counsel, and an Assistant

13  United States Attorney, knowingly violates or fails to perform any of

14  defendant's obligations under this agreement ("a breach"), the United

15  States may declare this agreement breached.  All of defendant's

16  obligations are material, a single breach of this agreement is

17  sufficient for the United States to declare a breach, and defendant

18  shall not be deemed to have cured a breach without the express

19  agreement of the United States in writing.  If the United States

20  declares this agreement breached, and the Court finds such a breach

21  to have occurred, then: (a) if defendant has previously entered a

22  guilty plea pursuant to this agreement, defendant will not be able to

23  withdraw the guilty plea, and (b) the United States will be relieved

24  of all its obligations under this agreement.

25       27.  Following the Court's finding of a knowing breach of this

26  agreement by defendant, should the United States choose to pursue any

27  charge that was either dismissed or not filed as a result of this

28  agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

28.    Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.    Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant

1  information to the United States Probation and Pretrial Services

2  Office and the Court, (b) correct any and all factual misstatements

3  relating to the Court's Sentencing Guidelines calculations and

4  determination of sentence, and (c) argue on appeal and collateral

5  review that the Court's Sentencing Guidelines calculations and the

6  sentence it chooses to impose are not error, although each party

7  agrees to maintain its view that the calculations in paragraph 13 are

8  consistent with the facts of this case.  While this paragraph permits

9  both the United States and defendant to submit full and complete

10  factual information to the United States Probation and Pretrial

11  Services Office and the Court, even if that factual information may

12  be viewed as inconsistent with the facts agreed to in this agreement,

13  this paragraph does not affect defendant's and the United States'

14  obligations not to contest the facts agreed to in this agreement.

15      30.  Defendant understands that even if the Court ignores any

16  sentencing recommendation, finds facts or reaches conclusions

17  different from those agreed to, and/or imposes any sentence up to the

18  maximum established by statute, defendant cannot, for that reason,

19  withdraw defendant's guilty plea, and defendant will remain bound to

20  fulfill all defendant's obligations under this agreement.  Defendant

21  understands that no one -- not the prosecutor, defendant's attorney,

22  or the Court -- can make a binding prediction or promise regarding

23  the sentence defendant will receive, except that it will be within

24  the statutory maximum.

25                       NO ADDITIONAL AGREEMENTS

26      31.  Defendant understands that, except as set forth herein,

27  there are no promises, understandings, or agreements between the

28  United States and defendant or defendant's attorney, and that no

15

1  additional promise, understanding, or agreement may be entered into

2  unless in a writing signed by all parties or on the record in court.

3      PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4      32.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10  JOSEPH T. MCNALLY
    Acting United States Attorney
11

12  _____        3/13/2025
    MAXWELL COLL                         _____
13  NISHA CHANDRAN                       Date
    ALEXANDER S. GORIN
14  Assistant United States Attorneys

15  STEFANIE SCHWARTZ
    TAMARA LIVSHIZ
16  Trial Attorneys
    Criminal Division, Computer Crime
17  and Intellectual Property Section

18

19  _____        3/3/25
    SHENGSHENG HE                        _____
20  Defendant                            Date

21

22  _____        3-3-25
    ROBERT C. HSU                        _____
23  Attorney for Defendant SHENGSHENG    Date
    HE

24

25

26

27

28

                              16

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. This agreement has been read to me in Mandarin, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        3/3/25
SHENGSHENG HE                           Date
Defendant

17

## CERTIFICATION OF INTERPRETER

I, _____, am fluent in the written and spoken English and Mandarin languages.  I accurately translated this entire agreement from English into Mandarin to defendant SHENGSHENG HE on this date.

_____          _____
INTERPRETER                                Date


## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am SHENGSHENG HE's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          3-3-25
ROBERT C. HSU                              _____
Attorney for Defendant SHENGSHENG          Date
HE

18

**EXHIBIT A**

FACTUAL BASIS

1.    Beginning from at least November 2021, and continuing through at least July 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly conspired with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others, to operate an unlicensed money transmitting business. Defendant participated in and knew of the agreement to operate an unlicensed money transmitting business and intended to help accomplish the objects of the conspiracy.  The unlicensed money transmitting business received millions of dollars in victim funds from U.S. persons targeted in cryptocurrency investment scams, also known as "pig butchering scams," and other related schemes. Defendant's unlicensed money transmitting business converted virtually all of the victim proceeds to the cryptocurrency Tether (or USDT) for a commission.  After converting the proceeds, the unlicensed money transmitting business facilitated the transfer of the USDT to a cryptocurrency wallet controlled by individuals in Cambodia.

**I.    Defendant Sets Up Axis Digital and Opens Account at Deltec Bank**

2.    Defendant conspired to operate Axis Digital Limited ("Axis Digital"), an entity that Co-Conspirator 1 incorporated under the laws of the Commonwealth of the Bahamas on or about November 30, 2021.  Using the Axis Digital business entity, defendant and Co-Conspirator 1 opened a bank account ("Bahamas Account #1") with the Bahamian financial institution Deltec Bank.  Before opening Bahamas Account #1, defendant and Co-Conspirator 1 traveled to the Bahamas to meet with Deltec Bank employees and discussed a money transmitting

business whereby defendant and his co-conspirators would convert U.S. dollars into USDT for a commission.

3.    Defendant worked with Co-Conspirator 1 to set up the Axis Digital business entity in the Bahamas and met with Deltec Bank employees on multiple occasions to facilitate the creation of Bahamas Account #1.

**II.    Defendant Facilitated the Transfer of Funds Required to Open Bahamas Account #1**

4.    After setting up the Axis Digital business entity and Bahamas Account #1, defendant, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others conspired to transfer roughly $1 million to Co-Conspirator 1's cryptocurrency account to demonstrate a proof of funds to Deltec Bank.  The proof of funds was required for Deltec Bank to allow wire transfers into Bahamas Account #1 from other financial institutions.

5.    On or around June 8, 2022, defendant introduced Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 to each other on an encrypted messaging platform and participated in discussions about the transfer of roughly $1 million in cryptocurrency to Co-Conspirator 1.  Defendant also participated in discussions about Co-Conspirator 1 returning the roughly $1 million in cryptocurrency to the co-conspirators after sending a proof of funds to Deltec Bank. Co-Conspirator 1 in fact received the $1 million from co-conspirators and sent a proof of funds to Deltec Bank, which enabled Axis Digital to begin receiving wires from other financial institutions.

## III. Defendant Traveled to Cambodia to Discuss the Transfers of Cryptocurrency to Individuals Involved in Scam Centers

6.    In July 2022, after opening Bahamas Account #1, but before funds transferred into Bahamas Account #1 from victims in the United States, defendant, Co-Conspirator 1, and Co-Conspirator 2 traveled to Phnom Penh, Cambodia, to meet with Co-Conspirator 3 and other co-conspirators based in Cambodia and elsewhere.  During the trip to Cambodia, defendant discussed with several co-conspirators the transfer of money from U.S. bank accounts to Bahamas Account #1, and the subsequent conversion of those funds to USDT for a commission. Defendant and several co-conspirators also discussed the transfer of USDT from Bahamas Account #1 to a cryptocurrency wallet that co-conspirators in Cambodia controlled.

7.    During the July 2022 trip to Cambodia, defendant and co-conspirators traveled within the greater Phnom Penh region to at least one compound wherein co-conspirators conducted cryptocurrency investment scams, also known as "pig butchering scams."  Defendant later came to understand that the funds flowing from U.S. financial institutions to the Axis Digital bank account in the Bahamas included money from victims of these cryptocurrency scams.

## IV. Axis Digital Limited Received More Than $36 Million From U.S. Bank Accounts Opened in the Names of U.S. Shell Companies

8.    Between June 2022 and July 2023, the Axis Digital bank account received at least approximately $36,905,259 from U.S. bank accounts set up in the names of U.S. shell companies.  Each of the shell companies received these funds from U.S. victims of cryptocurrency investment scams or related schemes.  This includes the following shell entities:

1        a.    B&C Commerce LLC, a shell company registered with the

2   California Secretary of State on or about January 21, 2022, with a

3   principal address in San Gabriel, California;

4        b.    Jimei Trading Inc., a shell company registered with

5   the California Secretary of State on or about May 15, 2022, with a

6   principal address in San Gabriel, California;

7        c.    YXJ Trading Corporation, a shell company registered

8   with the California Secretary of State on or about July 30, 2022,

9   with a principal address in Monterey Park, California;

10       d.    YYJ Consulting Corporation, a shell company registered

11  with the California Secretary of State on or about August 25, 2022,

12  with a principal address in Monterey Park, California;

13       e.    Sea Dragon Trading, LLC, a shell company registered

14  with the California Secretary of State on or about September 8, 2022,

15  with a principal address in Alhambra, California;

16       f.    SMX Beauty Inc., a shell company registered with the

17  California Secretary of State on or about October 13, 2022, with a

18  principal address in Monterey Park, California;

19       g.    SMX Travel Inc., a shell company registered with the

20  California Secretary of State on or about October 13, 2022, with a

21  principal address in Monterey Park, California; and

22       h.    Sea Dragon Remodel, Inc., a shell company registered

23  with the California Secretary of State on or about October 17, 2022,

24  with a principal address in Vernon, California.

25       9.    Defendant and his co-conspirators created so-called digital

26  transaction agreements and "Know Your Customer" or "KYC" forms

27  associated with the U.S. shell companies, including those listed in

28  Paragraph 8, detailing the conversion of millions of dollars to USDT.

The agreements each listed Axis Digital as the business entity conducting the conversion of funds.  The agreements each listed the same cryptocurrency address beginning with TRteo (the "TRteo Address") as the receiving wallet.  Defendant came to understand that the KYC forms for the shell companies and related wire transfers did not reflect legitimate business transfers.

**V.   Defendant Directed the Transfer of Funds to a Cryptocurrency Wallet Controlled by Co-Conspirators in Cambodia**

10.   When the U.S. bank accounts set up in the names of shell companies transferred victim funds to Bahamas Account #1, defendant and his co-conspirators directed Deltec Bank employees to convert the funds into USDT and to transfer the funds to the TRteo Address. Defendant directly messaged with Deltec Bank employees to coordinate these conversions and money transfers.  Defendant and his co-conspirators converted all of the funds in Bahamas Account #1 – more than $36 million – to USDT.  Defendant and his co-conspirators then directed the transfer of all of the funds to the TRteo Address.

11.   Defendant earned a commission on wire transfers into Bahamas Account #1 or the subsequent transfer of USDT to the TRteo Address. Defendant received ledgers from co-conspirators detailing the commissions he earned on wire transfers.

12.   Defendant agrees that Axis Digital laundered at least $36,905,259 in funds from U.S. shell companies.

**VI.  Defendant Did Not Comply With Money Transmitting Business Regulations and Knew the Source of Funds Derived from a Criminal Offense**

13.   Defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of the Axis Digital money transmitting business, which affected interstate and foreign

1  commerce.  The Axis Digital business was unlicensed in that it failed
2  to comply with the money transmitting business regulation
3  requirements under 31 U.S.C. § 5330 and the regulations promulgated
4  under that section.  Defendant also came to understand that at least
5  a portion of the funds flowing into Bahamas Account #1 were derived
6  from a criminal offense or were otherwise intended to be used to
7  promote or support unlawful activity.

8  **VII.  Defendant Received Victim Funds in a Bank of America Account**

9       14.  In addition to Bahamas Account #1, defendant came to
10  understand that he received U.S. victim funds directly into a Bank of
11  America account he controlled ("BofA Account").  Defendant opened the
12  BofA Account in the name of the company Crestview Services.  Defendant
13  received at least one wire directly from a U.S. shell company laundering
14  victim proceeds into the BofA Account.

15       15.  Defendant learned that based on the government's
16  investigation, Victim J.S. filed a complaint with the government
17  stating that they fell victim to a "pig butchering" scheme and was
18  scammed into sending what they believed were funds for investment.
19  J.S. was instructed to send the funds to a JPMC account belonging to
20  an entity called Haoyu 198 Trading.  Bank records show that J.S. sent
21  a wire for $176,440 to that JPMC account on November 15, 2022.  The
22  following day, on November 16, 2022, the JPMC account for Haoyu 198
23  Trading sent $150,000 to the BofA Account controlled by defendant.

24

25

26

27

28

**EXHIBIT B**

1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,            CR No.

13           Plaintiff,                  I N F O R M A T I O N

14           v.                          [18 U.S.C. § 371: Conspiracy to
                                         Operate an Illegal Money
15  SHENGSHENG HE,                       Transmitting Business;
      aka "Adam,"                        18 U.S.C. § 982: Criminal
16                                       Forfeiture]
             Defendant.

17

18

19

20

21

22       The Acting United States Attorney charges:

23                        COUNT ONE

24                     [18 U.S.C. § 371]

25  A.   INTRODUCTORY ALLEGATIONS

26       At times relevant to this Information:

27       1.   Defendant SHENGSHENG HE ("HE"), also known as ("aka")

28  "Adam," was a citizen of the United States and resided in Los

Angeles, California, and Mexico City, Mexico.

2.   Co-Conspirator 1 was a citizen of the United States and resided in Los Angeles, California.

3.   Co-Conspirator 2 was a citizen of the People's Republic of China ("PRC") and resided in the United Arab Emirates.

4.   Co-Conspirator 3 was a citizen of the PRC and St. Kitts and Nevis and resided in the Kingdom of Cambodia, the United Arab Emirates, and the PRC.

5.   Axis Digital Limited ("Axis Digital") was an entity incorporated under the laws of the Commonwealth of the Bahamas on or about November 30, 2021.

6.   "Bahamas Account #1" was an account at Deltec Bank and Trust Limited ("Deltec Bank") in the Bahamas, opened by Axis Digital on or about February 25, 2022.

7.   B&C Commerce LLC ("B&C Commerce") was a shell company registered with the California Secretary of State on or about January 21, 2022, with a principal address in San Gabriel, California.

8.   Jimei Trading Inc. ("Jimei Trading") was a shell company registered with the California Secretary of State on or about May 15, 2022, with a principal address in San Gabriel, California.

9.   YXJ Trading Corporation ("YXJ Trading") was a shell company registered with the California Secretary of State on or about July 30, 2022, with a principal address in Monterey Park, California.

10.   YYJ Consulting Corporation ("YYJ Consulting") was a shell company registered with the California Secretary of State on or about August 25, 2022, with a principal address in Monterey Park, California.

11.   Sea Dragon Trading, LLC ("Sea Dragon Trading") was a shell

2

company registered with the California Secretary of State on or about September 8, 2022, with a principal address in Alhambra, California.

12. SMX Beauty Inc. ("SMX Beauty") was a shell company registered with the California Secretary of State on or about October 13, 2022, with a principal address in Monterey Park, California.

13. SMX Travel Inc. ("SMX Travel") was a shell company registered with the California Secretary of State on or about October 13, 2022, with a principal address in Monterey Park, California.

14. Sea Dragon Remodel, Inc. ("Sea Dragon Remodel") was a shell company registered with the California Secretary of State on or about October 17, 2022, with a principal address in Vernon, California.

15. The virtual-currency wallet address beginning with TRteo (the "TRteo Address") was a wallet that received transfers of virtual currency converted from funds in Bahamas Account #1.

B.  DEFINITIONS

16. "Digital currency" or "virtual currency" is currency that exists only in digital form; it has some of the characteristics of traditional money, but it does not have a physical equivalent. Cryptocurrency, a type of virtual currency, is a network-based medium of value or exchange that may be used as a substitute for traditional currency to buy goods or services or exchanged for traditional currency or other cryptocurrencies.  USDT, or Tether, is a virtual currency whose value is pegged to the U.S. dollar.

17. The term "spoofed" refers to domain spoofing, a process by which cybercriminals seek to persuade victims that a web address or email belongs to a legitimate and generally trusted company, when in fact it links the user to a fraudulent site controlled by a cybercriminal.

18.  In "pig butchering" fraud schemes (a term derived from a foreign-language phrase used to describe these crimes), scammers encounter victims on dating services, social media, or through unsolicited messages or calls, often masquerading as a wrong number. Scammers initiate relationships with victims and slowly gain their trust, eventually introducing the idea of making a business investment using cryptocurrency.  Victims are then directed to other members of the scheme operating fraudulent cryptocurrency investment platforms and applications, where victims are persuaded to make financial investments.  Once funds are sent to scammer-controlled accounts, the investment platform often falsely shows significant gains on the purported investment, and the victims are thus induced to make additional investments.  Ultimately, the victims are unable to withdraw or recover their money, often resulting in significant losses for the victims.

19.  In "customer service" or "tech support" fraud schemes, victims are contacted by fake customer service or technology support representatives.  Scammers often pretend to represent a prominent company and contact the victim to alert them to a supposed infection with a computer virus or false issue with the victim's computer or other digital device.  Scammers then take a variety of actions to defraud the victim, including, but not limited to, the following: (a) causing the victim to provide them with remote access to the victim's digital devices to supposedly remediate the problem, (b) requesting that funds be transferred to pay for assistance, and (c) advising the victim to transfer money from accounts that are supposedly compromised by the problem to accounts controlled by the scammer.

C.    OBJECT OF THE CONSPIRACY

20.    Beginning on an unknown date, but no later than on or about November 2021, and continuing to in or about July 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant HE, with others known and unknown, knowingly conspired and agreed to commit an offense against the United States, namely, to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(b)(1)(B) and 1960(b)(1)(C).

D.    THE MANNER AND MEANS OF THE CONSPIRACY

21.    The object of the conspiracy was to be accomplished in substance as follows:

Solicitation of Investment Fraud Victims

a.    Unindicted co-conspirators would contact victims directly through unsolicited social-media interactions, telephone calls and messages, and online dating services.

b.    Unindicted co-conspirators would gain the trust of victims by establishing either professional or romantic relationships with the victims.  Unindicted co-conspirators would build these relationships through interstate communications, including, but not limited to, electronic messages sent via end-to-end encrypted applications.

c.    Unindicted co-conspirators would promote fraudulent cryptocurrency investments to the victims after gaining the victims' trust.

d.    Unindicted co-conspirators would establish spoofed domains and websites that resembled legitimate cryptocurrency trading platforms.

e.    In some executions of the scheme, unindicted co-

5

conspirators would fraudulently induce victims into investing in cryptocurrency through these fraudulent and spoofed investment platforms.

f.    In other executions of the scheme, unindicted co-conspirators would fraudulently induce victims into investing in cryptocurrency by sending funds via wire transfer.

g.    Unindicted co-conspirators would fraudulently represent to victims that the victims' investments were appreciating when, in fact, those funds had been converted by members of the fraud scheme.

Solicitation of Customer Service and Tech Support Fraud Victims

h.    Unindicted co-conspirators would fraudulently represent to victims through interstate communications, including, but not limited to, electronic messages and phone calls, that they were from a customer service or technology support company.

i.    Unindicted co-conspirators would fraudulently induce victims to send funds via wire transfer or cryptocurrency trading platforms to purportedly remediate a non-existent virus or other false computer-related problem.

Operation of Unlicensed Money Transmitting Business

j.    Co-conspirators would register dozens of U.S. shell companies with the California Secretary of State and elsewhere, including B&C Commerce, Jimei Trading, YXJ Trading, YYJ Consulting, SMX Beauty, SMX Travel, Sea Dragon Trading, and Sea Dragon Remodel.

k.    Co-conspirators would open bank accounts in the names of various shell companies.

l.    Co-conspirators would receive victim funds in U.S. bank accounts established on behalf of shell companies and cause the

6

further transfer of victim funds to domestic and international bank accounts.

m.    Defendant HE and co-conspirators would monitor the receipt and execution of interstate and international wire transfers of victim funds, including to Bahamas Account #1.

n.    Defendant HE and other co-conspirators would monitor the conversion of victim funds to USDT and the subsequent distribution of virtual currency to cryptocurrency wallets.

o.    Defendant HE and co-conspirators would direct the conversion of nearly all of the funds into USDT and the subsequent transfer of cryptocurrency to the TRteo Address.

p.    Defendant HE would receive a commission for the transfer of victim funds to USDT and would distribute ledgers detailing the profit-sharing arrangement.

q.    Defendant HE and other co-conspirators would possess fraudulent "Know Your Customer" ("KYC") documents associated with these wire transfers.

r.    Co-conspirators would cause wire transfers to be sent through various intermediary bank accounts before reaching their final beneficiary.

s.    Defendant HE would receive victim funds in financial accounts he directly controlled.

t.    Defendant HE and other co-conspirators would communicate with each other and coordinate acts in furtherance of the conspiracy through encrypted messaging services.

E.    OVERT ACTS

22.    In furtherance of the conspiracy and to accomplish its object, defendant HE, Co-Conspirators 1, 2, and 3, and others known

and unknown, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On November 30, 2021, Co-Conspirator 1, defendant HE, and other co-conspirators established the Bahamian entity Axis Digital.

Overt Act No. 2:   On June 8, 2022, defendant HE sent messages in an encrypted messaging platform introducing several co-conspirators to each other and discussing the transfer of funds to Co-Conspirator 1 to open Bahamas Account #1, including a video of Co-Conspirator 1's financial account.

Overt Act No. 3:   On July 6, 2022, defendant HE traveled to Phnom Penh, Cambodia, to meet with co-conspirators regarding the operation of Bahamas Account #1 and the transfer of USDT to the TRTeo Address.

Overt Act No. 4:   On July 6, 2022, defendant HE sent a message in an encrypted messaging platform to Co-Conspirator 3 regarding communications with Deltec Bank employees.

Overt Act No. 5:   On July 6, 2022, defendant HE sent via an encrypted messaging platform a template for the "Know Your Customer" document associated with Axis Digital and the conversion of funds in Bahamas Account #1 to USDT.

Overt Act No. 6:   On an unknown date but no later than July 7, 2022, defendant HE corresponded with a Deltec Bank employee who acted as the account manager for Bahamas Account #1 regarding the conversion of funds to USDT.

Overt Act No. 7:   On August 5, 2022, defendant HE corresponded

8

with Deltec Bank employees on an encrypted messaging platform and
confirmed that funds from Bahamas Account #1 should be converted to
USDT and transferred to the TRteo Address.

Overt Act No. 8:    On an unknown date but no later than
September 28, 2022, defendant HE sent Deltec Bank employees wire
forms associated with transfers to Bahamas Account #1 from YYJ
Consulting and YXJ Trading.

Overt Act No. 9:    On November 14, 2022, defendant HE messaged
co-conspirators stating that, "Starting this time, the three of us
have the same ratio of 20/20/20."

Overt Act No. 10:    On November 16, 2022, defendant HE received,
in a U.S. bank account he directly controlled, approximately $150,000
from a shell company that received victim funds from a cryptocurrency
investment scam.

1                         FORFEITURE ALLEGATION

2                          [18 U.S.C. § 982]

3        1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 982(a)(2), in the event of defendant's

7   conviction of the offense set forth in this Information.

8        2.    Defendant, if so convicted, shall forfeit to the United

9   States of America the following:

10            (a) All right, title and interest in any and all property,

11   real or personal, constituting, or derived from, any proceeds

12   obtained, directly or indirectly, as a result of the offense; and

13            (b) To the extent such property is not available for

14   forfeiture, a sum of money equal to the total value of the property

15   described in subparagraph (a).

16       3. Pursuant to Title 21, United States Code, Section 853(p), as

17   incorporated by Title 18, United States Code, Section 982(b),

18   defendant, if so convicted, shall forfeit substitute property, up to

19   the total value of the property described in the preceding paragraph

20   if, as the result of any act or omission of said defendant, the

21   property described in the preceding paragraph, or any portion

22   thereof: (a) cannot be located upon the exercise of due diligence;

23   (b) has been transferred, sold to or deposited with a third party;

24   (c) has been placed beyond the jurisdiction of the court; (d) has

25   been

26   //

27   //

28   //

                                   10

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

JOSEPH T. MCNALLY
Acting United States Attorney


DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division

KHALDOUN SHOBAKI
Assistant United States Attorney
Chief, Cyber & Intellectual Property
Crimes Section

MAXWELL COLL
ALEXANDER S. GORIN
Assistant United States Attorneys
Cyber & Intellectual Property Crimes
Section

NISHA CHANDRAN
Assistant United States Attorney
Corporate and Securities Strike
Force

STEFANIE SCHWARTZ
TAMARA LIVSHIZ
Trial Attorneys
National Cryptocurrency Enforcement
Team
Computer Crime & Intellectual
Property Section