BILAL A. ESSAYLI
Acting United States Attorney
DAVID T. RYAN
Chief, National Security Division
MAXWELL COLL (Cal Bar No. 312651)
ALEXANDER S. GORIN (Cal. Bar No. 326235)
Assistant United States Attorneys
Terrorism and Export Crimes Section
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-1785/2429
    Facsimile:  (213) 894-0141
    E-mail:    maxwell.coll@usdoj.gov
            nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>        v.<br><br>SHENGSHENG HE,<br>  "Adam,"<br><br>      Defendant. | No. CR 2:25-00175-RGK<br><br>GOVERNMENT'S SENTENCING POSITION<br>REGARDING DEFENDANT SHENGSHENG HE |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Maxwell Coll, Nisha Chandran, and Alexander Gorin, hereby files its sentencing position for defendant SHENGSHENG HE.

This sentencing position is based upon the attached memorandum of points and authorities, the declaration of Assistant United States Attorney Maxwell Coll, the declaration of Special Agent George Jasek, the files and records in this case, the United States Probation and Pretrial Services Office's presentence investigation report, and such further evidence and argument as the Court may permit.

Dated: August 25, 2025                    Respectfully submitted,

                                          BILAL A. ESSAYLI
                                          Acting United States Attorney

                                          DAVID T. RYAN
                                          Assistant United States Attorney
                                          Chief, National Security Division


                                              /s/ *Maxwell Coll*
                                          MAXWELL COLL
                                          NISHA CHANDRAN
                                          ALEXANDER S. GORIN
                                          Assistant United States Attorney

                                          STEFANIE SCHWARTZ
                                          TAMARA LIVSHIZ
                                          Trial Attorneys
                                          Criminal Division, Computer Crime
                                          and Intellectual Property Section

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        This case arises out of an international scheme to launder
4    millions of dollars stolen from U.S. victims of cryptocurrency
5    investment scams (also known as "pig butchering" scams).    The
6    government has charged by indictment six defendants involved in the
7    money-laundering network, five of whom have pleaded guilty and one of
8    whom remains a fugitive.[1]    The government has also charged by
9    information three other individuals involved in the scheme, all of whom
10   have also pleaded guilty, including this defendant.[2]    Defendant
11   SHENGSHENG HE is the third defendant to be sentenced of the nine
12   individuals charged.    Defendant SHENGSHENG HE is the first defendant
13   to be sentenced who was directly involved in the receipt of victim
14   funds and the conversion of victim funds to the cryptocurrency Tether.

15        On April 7, 2025, defendant pleaded guilty pursuant to a plea
16   agreement to one count of criminal conspiracy to operate an
17   unlicensed money transmitting business, in violation of 18 U.S.C. §
18   371.  (Dkts. 35, 52.)  In the plea agreement, defendant SHENGSHENG HE
19   agreed to a base offense level of 8; that defendant SHENGSHENG HE
20   laundered funds more than $25,000,000, such that a +22 specific
21   offense characteristic must be applied; and that defendant was in the
22   business of laundering funds, such that another +4 enhancement must
23   be applied.  (Dkt. 35 at 8.)

24

25        [1] All of the indicted defendants are in cases pending before
26   this Court.  See United States v. Lu Zhang, Joseph Wong, Justin
     Walker, and Hailong Zhu, 2:23-00596-RGK-3; United States v. Daren Li
27   and Yicheng Zhang, 2:24-393-RGK.

28        [2] See United States v. Shengsheng He, 2:25-CR-00175-RGK; United
     States v. Jose Somarriba, 2:25-CR-00181-RGK; and United States v.
     Jingliang Su, 2:25-CR-00362-RGK.

The United States Probation and Presentence Office ("USPPO") issued its Presentence Report ("PSR") on July 23, 2025.  (Dkt. 53.) The PSR calculated a total offense level of 29, which included a base offense level of 8 plus a 22-level increase because the loss attributable to defendant was greater than $25,000,000 (PSR ¶¶ 73, 74); a four-level increase because defendant was in the business of laundering funds (PSR ¶ 76); a three-level reduction for defendant's acceptance of responsibility (PSR ¶¶ 87–88); and a two-level reduction for zero-point-offender status (PSR ¶ 90.)  Based on a total offense level of 29, and a Criminal History Category of I, the PSR calculated an advisory Guideline range of 87 to 108 months' incarceration.  (PSR ¶ 132.)  The PSR notes that the statutory maximum term of imprisonment is five years.  (PSR ¶ 131.)

The government agrees with the PSR's criminal history calculation and the offense-level calculation.  However, the government believes that a further five-level reduction is appropriate for the reasons stated in its contemporaneously filed motion.  In light of this, the total offense level calculation decreases to 24 and the resulting advisory Guidelines range is 51 to 63 months.  Thus, the government respectfully requests that the Court sentence defendant to: (1) a Guidelines term of 51 months' imprisonment; (2) three years of supervised release; (3) restitution in the amount of $26,867,242.44; and (4) a mandatory special assessment of $100.

**II.  OVERVIEW OF STRUCTURE OF SCAM AND MONEY LAUNDERING NETWORK**

As described in Count One of the Information, the conspiracy involved an international network of co-conspirators who scammed U.S.

victims and laundered victim money through U.S. shell companies, international bank accounts, and cryptocurrency wallets.

**International Scammers**:  First, unknown co-conspirators largely residing overseas (not defendant SHENGSHENG HE nor any of the charged co-conspirators in the related cases) contacted U.S. victims directly through unsolicited social-media interactions, telephone calls and messages, and online dating services.  These co-conspirators gained the trust of victims by establishing either professional, friendly, or romantic relationships with them.  After gaining the victims' trust, the co-conspirators promoted fraudulent cryptocurrency investments to the victims.  Co-conspirators established spoofed domains and websites that often resembled legitimate cryptocurrency trading platforms.  In some executions of the scheme, co-conspirators fraudulently induced victims into investing in cryptocurrency through these fraudulent and spoofed investment platforms.  In other executions of the scheme, co-conspirators fraudulently induced victims into investing in cryptocurrency by sending funds via wire transfers to U.S.-based bank accounts.  Co-conspirators fraudulently represented to victims that their investments were appreciating when, in fact, those funds were stolen.

**Domestic Laundering Networks**: Second, a group of domestic money launderers received victim funds in U.S.-based bank accounts established on behalf of U.S. shell companies and caused the further transfer of victim funds to domestic and international bank accounts. Defendants in the related case, <u>United States v. Lu Zhang, et al.,</u> 23-CR-596-RGK, fit within this category of co-conspirators.  These defendants, among other co-conspirators, worked together to register

3

shell companies with the California Secretary of State and/or open bank accounts in the names of those shell companies with U.S. financial institutions, including Bank of America ("BoA") and JPMorgan Chase ("JPMC").  The shell company accounts received bank wires from victims of the scheme throughout the United States.  These individuals discussed when and how to receive and execute interstate and international wire transfers of victim funds, arranged for the transfer of the fraudulently obtained proceeds via interstate and international wire transfers, and caused wire transfers to be sent through various intermediary bank accounts before reaching their final beneficiary.  These defendants and other money movers traveled to financial institutions within the Central District of California to access funds in the bank accounts used to launder fraud proceeds, called the banks to inquire about the status of the funds, and closely monitored the bank accounts, insuring victim funds continued to flow into and out of the accounts.

**Bahamian Cryptocurrency Converters**:  Third, virtually all of the victim funds flowed from U.S. bank accounts to two bank accounts at the Bahamian financial institution Deltec Bank & Trust ("Deltec Bank"), referred to in related court documents as Bahamas Account #1 and Bahamas Account #2.  Defendant SHENGSHENG HE and defendants Jose Somarriba and Jingliang Su in the related cases have been charged with setting up the Bahamian entity Axis Digital Limited and the affiliated bank account Bahamas Account #1.  Once these defendants received the victim funds from transfers the money movers initiated, the Bahamian cryptocurrency converters would cause the funds to be

converted from U.S. dollars to the cryptocurrency Tether, or USDT.[3] After the funds were converted to USDT, defendant SHENGSHENG HE and the Bahamian cryptocurrency converters would cause Deltec Bank to transfer the USDT to a cryptocurrency wallet controlled by individuals overseas.

**Final Distribution of Victim Funds**:     Fourth, after co-conspirators laundered the victim funds from U.S.-based bank accounts to the Bahamian bank accounts and converted the funds to USDT, a network of foreign-based individuals would receive the cryptocurrency in a virtual currency wallet.  After receiving the funds in the virtual currency wallet, these co-conspirators would distribute the USDT to foreign criminals running the scam centers overseas, including in the Kingdom of Cambodia.  The figure below shows the overall flow of funds in the charged scheme:



---

[3] Tether, or "USDT," is a type of cryptocurrency known as a stablecoin pegged to the U.S. dollar.  Thus, one USDT always equals one U.S. dollar.

### III.  DEFENDANT PARTICIPATED IN THE CONVERSION OF VICTIM FUNDS TO TETHER AND THE DISSIPATION OF VICTIM PROCEEDS TO CAMBODIA

As stated in the plea agreement (Dkt. 35 at 19-24):  Beginning from at least November 2021, and continuing through at least July 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly conspired with Co-Conspirator 1 (Jose Somarriba), Co-Conspirator 2 (Jingliang Su), Co-Conspirator 3 (Daren Li), and others, to operate an unlicensed money transmitting business.  Defendant participated in and knew of the agreement to operate an unlicensed money transmitting business and intended to help accomplish the objects of the conspiracy.  The unlicensed money transmitting business received millions of dollars in victim funds from U.S. persons targeted in cryptocurrency investment scams, also known as "pig butchering scams," and other related schemes.  Defendant's unlicensed money transmitting business converted virtually all of the victim proceeds to the cryptocurrency Tether (or USDT) for a commission.  After converting the proceeds, the unlicensed money transmitting business facilitated the transfer of the USDT to a cryptocurrency wallet controlled by individuals in Cambodia.

***Defendant Sets Up Axis Digital and Opens Account at Deltec Bank***

Defendant conspired to operate Axis Digital Limited ("Axis Digital"), an entity that Jose Somarriba incorporated under the laws of the Commonwealth of the Bahamas on or about November 30, 2021. Using the Axis Digital business entity, defendant and Jose Somarriba opened a bank account ("Bahamas Account #1") with the Bahamian financial institution Deltec Bank.  Before opening Bahamas Account #1, defendant and Jose Somarriba traveled to the Bahamas to meet with

1    Deltec Bank employees and discussed a money transmitting business
2    whereby defendant and his co-conspirators would convert U.S. dollars
3    into USDT for a commission.

4         Defendant worked with Jose Somarriba to set up the Axis Digital
5    business entity in the Bahamas and met with Deltec Bank employees on
6    multiple occasions to facilitate the creation of Bahamas Account #1.

7    ***Defendant Facilitated the Transfer of Funds Required to Open Bahamas***
8    ***Account #1***

9         After setting up the Axis Digital business entity and Bahamas
10    Account #1, defendant, Jose Somarriba, Jingliang Su, Daren Li, and
11    others conspired to transfer roughly $1 million to Jose Somarriba's
12    cryptocurrency account to demonstrate a proof of funds to Deltec
13    Bank.  The proof of funds was required for Deltec Bank to allow wire
14    transfers into Bahamas Account #1 from other financial institutions.

15         On or around June 8, 2022, defendant introduced Jose Somarriba,
16    Jingliang Su, and Daren Li to each other on an encrypted messaging
17    platform and participated in discussions about the transfer of
18    roughly $1 million in cryptocurrency to Jose Somarriba.  Defendant
19    also participated in discussions about Jose Somarriba returning the
20    roughly $1 million in cryptocurrency to the co-conspirators after
21    sending a proof of funds to Deltec Bank.  Jose Somarriba in fact
22    received the $1 million from co-conspirators and sent a proof of
23    funds to Deltec Bank, which enabled Axis Digital to begin receiving
24    wires from other financial institutions.

25

26

27

28

***Defendant Traveled to Cambodia to Discuss the Transfers of Cryptocurrency to Individuals Involved in Scam Centers***

In July 2022, after opening Bahamas Account #1, but before funds transferred into Bahamas Account #1 from victims in the United States, defendant, Jose Somarriba, and Jingliang Su traveled to Phnom Penh, Cambodia, to meet with Daren Li and other co-conspirators based in Cambodia and elsewhere. During the trip to Cambodia, defendant discussed with several co-conspirators the transfer of money from U.S. bank accounts to Bahamas Account #1, and the subsequent conversion of those funds to USDT for a commission. Defendant and several co-conspirators also discussed the transfer of USDT from Bahamas Account #1 to a cryptocurrency wallet that co-conspirators in Cambodia controlled.

During the July 2022 trip to Cambodia, defendant and co-conspirators traveled within the greater Phnom Penh region to at least one compound wherein co-conspirators conducted cryptocurrency investment scams, also known as "pig butchering scams." Defendant later came to understand that the funds flowing from U.S. financial institutions to the Axis Digital bank account in the Bahamas included money from victims of these cryptocurrency scams.

***Axis Digital Limited Received More Than $36 Million From U.S. Bank Accounts Opened in the Names of U.S. Shell Companies***

Between June 2022 and July 2023, the Axis Digital bank account received at least approximately $36,905,259 from U.S. bank accounts set up in the names of U.S. shell companies. Each of the shell companies received these funds from U.S. victims of cryptocurrency

investment scams or related schemes.  This includes the following shell entities:

      a.   B&C Commerce LLC, a shell company registered with the California Secretary of State on or about January 21, 2022, with a principal address in San Gabriel, California;

      b.   Jimei Trading Inc., a shell company registered with the California Secretary of State on or about May 15, 2022, with a principal address in San Gabriel, California;

      c.   YXJ Trading Corporation, a shell company registered with the California Secretary of State on or about July 30, 2022, with a principal address in Monterey Park, California;

      d.   YYJ Consulting Corporation, a shell company registered with the California Secretary of State on or about August 25, 2022, with a principal address in Monterey Park, California;

      e.   Sea Dragon Trading, LLC, a shell company registered with the California Secretary of State on or about September 8, 2022, with a principal address in Alhambra, California;

      f.   SMX Beauty Inc., a shell company registered with the California Secretary of State on or about October 13, 2022, with a principal address in Monterey Park, California;

      g.   SMX Travel Inc., a shell company registered with the California Secretary of State on or about October 13, 2022, with a principal address in Monterey Park, California; and

      h.   Sea Dragon Remodel, Inc., a shell company registered with the California Secretary of State on or about October 17, 2022, with a principal address in Vernon, California.

1   Defendant and his co-conspirators created so-called digital

2   transaction agreements and "Know Your Customer" or "KYC" forms

3   associated with the U.S. shell companies, including those listed in

4   Paragraph 8, detailing the conversion of millions of dollars to USDT.

5   The agreements each listed Axis Digital as the business entity

6   conducting the conversion of funds.  The agreements each listed the

7   same cryptocurrency address beginning with TRteo (the "TRteo

8   Address") as the receiving wallet.  Defendant came to understand that

9   the KYC forms for the shell companies and related wire transfers did

10  not reflect legitimate business transfers.

11  ***Defendant Directed the Transfer of Funds to a Cryptocurrency Wallet***

12  ***Controlled by Co-Conspirators in Cambodia***

13  When the U.S. bank accounts set up in the names of shell

14  companies transferred victim funds to Bahamas Account #1, defendant

15  and his co-conspirators directed Deltec Bank employees to convert the

16  funds into USDT and to transfer the funds to the TRteo Address.

17  Defendant directly messaged with Deltec Bank employees to coordinate

18  these conversions and money transfers.  Defendant and his co-

19  conspirators converted all of the funds in Bahamas Account #1 – more

20  than $36 million – to USDT.  Defendant and his co-conspirators then

21  directed the transfer of all of the funds to the TRteo Address.

22  Defendant earned a commission on wire transfers into Bahamas

23  Account #1 or the subsequent transfer of USDT to the TRteo Address.

24  Defendant received ledgers from co-conspirators detailing the

25  commissions he earned on wire transfers.

26  Defendant agrees that Axis Digital laundered at least $36,905,259

27  in funds from U.S. shell companies.

28

10

***Defendant Did Not Comply With Money Transmitting Business Regulations and Knew the Source of Funds Derived from a Criminal Offense***

Defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of the Axis Digital money transmitting business, which affected interstate and foreign commerce. The Axis Digital business was unlicensed in that it failed to comply with the money transmitting business regulation requirements under 31 U.S.C. § 5330 and the regulations promulgated under that section. Defendant also came to understand that at least a portion of the funds flowing into Bahamas Account #1 were derived from a criminal offense or were otherwise intended to be used to promote or support unlawful activity.

***Defendant Received Victim Funds in a Bank of America Account***

In addition to Bahamas Account #1, defendant came to understand that he received U.S. victim funds directly into a Bank of America account he controlled ("BofA Account"). Defendant opened the BofA Account in the name of the company Crestview Services. Defendant received at least one wire directly from a U.S. shell company laundering victim proceeds into the BofA Account.

Defendant learned that based on the government's investigation, Victim J.S. filed a complaint with the government stating that they fell victim to a "pig butchering" scheme and was scammed into sending what they believed were funds for investment. J.S. was instructed to send the funds to a JPMC account belonging to an entity called Haoyu 198 Trading. Bank records show that J.S. sent a wire for $176,440 to that JPMC account on November 15, 2022. The following day, on November

16, 2022, the JPMC account for Haoyu 198 Trading sent $150,000 to the BofA Account controlled by defendant.

## IV.  THE USPPO'S CALCULATIONS

### A.  The Government Concurs with the USPPO's Criminal History Calculations and the Guidelines Offense Level.

The USPPO determined that defendant has zero criminal history points. (PSR ¶ 96.)  Defendant thus falls within Criminal History Category I. (Id.)  The government concurs with this calculation.

The PSR also calculated, based on the above facts, a total offense level of 29. (PSR ¶ 132.)  The government concurs with the base offense level of 8 calculated by the PSR. (PSR ¶ 57.)  The PSR's total offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| Loss Amount More Than $25,000,000: | +22 | U.S.S.G. § 2B1.1(b)(1)(L) |
| Business of Laundering | +4 | U.S.S.G. § 2S1.1(b)(2)(C) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |
| Zero Point Offender: | -2 | U.S.S.G. § 4C1.1 |
| _____ | | |
| TOTAL: | 29 | |

Based on that calculation, the USPPO recognized that a total offense level of 29 and a Criminal History Category of I yield an advisory Guidelines range of 87 to 108 months' imprisonment, though the statutory maximum sentence is 60 months. (PSR ¶ 132.)

**B.    The Government Concurs with the PSR's Calculations.**

The loss amount in these cases is devastating.  Financial tracing shows that Bahamas Account #1 received more than $36 million in funds from U.S. shell companies funneling victim proceeds that were then converted to the cryptocurrency USDT and transferred to a virtual wallet controlled by co-conspirators overseas including in Cambodia.  As detailed in the Victim Impact Statements, dozens of U.S. citizens lost substantial sums of money in the scams--in some instances, their entire life savings.  Because the victim funds were wired overseas, converted to cryptocurrency and further dispersed to dozens of unhosted virtual wallets, the government was not able to freeze, seize, or recover any of the direct victim proceeds.[4]  Due to the money-laundering network, the victims' savings and supposed "investments" are gone.

**C.    The Government Requests a 5-Level Departure.**

The government has filed a contemporaneous document requesting a five-level departure.

*  *  *

Accordingly, the government believes the total offense level calculation for defendant is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| Loss Amount More than $25,000,000: | +20 | U.S.S.G. § 2B1.1(b)(1)(L) |
| Business of Laundering | +4 | U.S.S.G. § 2S1.1(b)(2)(C) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |

---

[4] The government continues to pursue alternative ways to recover funds for victims of these cases.

13

1    Zero Point Offender:        -2   U.S.S.G. § 4C1.1

2    Departure                   -5   Contemporaneous Filing

3    _____

4    TOTAL:                    24

5        Based on a Criminal History Category of I, the advisory

6    Guidelines range is 51 to 63 months' imprisonment.  The government's

7    recommended sentence is at the low-end of this advisory Guidelines

8    range: 51 months' incarceration.

9        **D.   Joint and Several Restitution Obligation**

10       The government submits that defendant SHENGSHENG HE should be

11   held jointly and severally liable with the below-listed convicted co-

12   participants (which list includes the defendant) in the offense

13   conduct for the amount of restitution ordered in this judgement:

14       • Lu Zhang (Case No. 23-CR-596-RGK-1)

15       • Joseph Wong (Case No. 23-CR-596-RGK-2)

16       • Justin Walker (Case No. 23-CR-596-RGK-3)

17       • Daren Li (Case No. 24-CR-311-RGK-1)

18       • Yicheng Zhang (Case No. 24-CR-311-RGK-2)

19       • Jose Somarriba (Case No. 25-CR-181-RGK)

20       • Jingliang Su (Case No. 25-CR-362-RGK)

21       The victims' recovery remains limited to the amount of their

22   loss and the defendant's liability for restitution ceases if and when

23   the victims receive full restitution as to the defendant, or when the

24   victims are made whole, whichever is earlier.

25       The government attaches hereto as Exhibit 1 to the Declaration

26   of Special Agent John Jasek an anonymized list of victims with their

27   respective loss amounts.  The total restitution owed is

28

                                    14

**$26,867,242.44.**  The victims listed in this document are individuals who sent funds to shell companies that transferred funds to Bahamas Account #1, and who self-reported their losses to the government. The amount listed is the amount the government can attribute to the shell company bank accounts based on the self-reporting documentation.  Because victims were often re-victimized and/or told to send their funds to different money-laundering networks, the loss amount for each victim may exceed the amount attributable to this domestic money-laundering cell.

**V.  VICTIM IMPACT STATEMENTS**

The government has submitted contemporaneously with this filing a sealed document attaching victim impact statements.

**VI.  THE GOVERNMENT RECOMMENDS 51 MONTHS' INCARCERATION**

The government recommends that the defendant be sentenced to a Guidelines term of 51 months' imprisonment, a three-year period of supervised release, a $100 special assessment, and restitution of $26,867,242.44.  Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

**A.  Need to Afford Adequate Deterrence**

Economic crimes like the charged money laundering scheme are quintessentially deterrable.  "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'"  See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After *Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)).  In fact, Congress, in drafting section 3553, confirmed

15

that this common-sense principle was one of the driving forces for including deterrence among the goals of sentencing. See S. Rep. No. 98-255, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("To deter others from committing the offense . . . is particularly important in the area of white collar crime."). Indeed, Congress was expressly concerned with the fact that "[m]ajor white collar criminals often are sentenced to . . . little or no imprisonment," which the offenders disregard as "a cost of doing business." Id. As Judge Bea has written, "bank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision." United States v. Edwards, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring).

Conspiracies like the one involved in this case are the lifeline for international cryptocurrency investment frauds. The funds transferred overseas and converted to cryptocurrency give criminal syndicates the means to traffic humans and run scam compounds. Individuals who recklessly set up international bank accounts and convert tens of millions of dollars must be deterred from operating money transmitting businesses that funnel victim proceeds overseas. Defendant's conduct was reckless at best. After personally traveling to Cambodia to meet with the recipients of the funds and visit a scam compound, defendant's company and Bahamian bank account received millions of dollars from U.S. shell companies. Defendant and his co-conspirators converted virtually all of the proceeds to Tether and directed the transfer of those funds to the cryptocurrency address controlled by persons defendant met in Cambodia, without regard for

the sources of funds.  The Court should deter this reckless approach to conspiring to operate money services businesses.

## B.  Seriousness of the Offense

This is a case in which the sentencing guidelines appropriately identify the factors that make defendant's conduct so serious: the millions of dollars in loss to numerous victims throughout the United States and the business of laundering funds.  Together, these factors speak to a sophisticated scheme that devastated the lives of many U.S. citizens.  The effectiveness of the crime also prevented the government from freezing, seizing, or recovering any of the direct victim proceeds.  The funds were dissipated across unhosted virtual wallets controlled by individuals overseas, primarily in Southeast Asia.

## C.  Need to Avoid Unwarranted Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  The government's within-Guidelines recommended sentence avoids an unwarranted disparity with similarly situated defendants.

**VII. CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence defendant to 51 months' imprisonment, three years' supervised release, a $100 special assessment, and restitution of $26,867,242.44.

## DECLARATION OF GEORGE JASEK

1.   I am a Special Agent ("SA") with the United States Secret Service and have been so employed since March 2018.  I am currently assigned to the Criminal Investigative Division in Washington, District of Columbia.  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.   Attached hereto as **Exhibit 1** is a list of U.S. victims who sent funds to shell companies that transferred their funds to Bahamas Account #1.  The amount of the loss is based on a government analysis of self-reporting documentation and shell company records.

3.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: August 25, 2025.

_____
GEORGE JASEK

1

## <u>DECLARATION OF AUSA MAXWELL COLL</u>

2     I, Maxwell Coll, hereby declare and state:

3     1.    I am an Assistant United States Attorney with the Cyber and
4  Intellectual Property Crimes Section at the U.S. Attorney's Office
5  for the Central District of California.  I am one of the prosecutors
6  assigned to this case.

7     2.    This declaration is made in support of the government's
8  sentencing position for defendant Shengsheng He.

9     3.    Attached hereto as **Exhibit 2** is a true and correct copy of
10  a compilation of relevant victim impact statements provided to the
11  United States Attorney's Office as of the date of this filing.

12     4.    I declare under penalty of perjury under the laws of the
13  United States of America that the foregoing is true and correct.

14  DATED: August 25, 2025.

15

16

17  _____

18                    MAXWELL COLL

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Cynthia Avila-Sandoval, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action; that I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by email described in this Proof of Service was made; that on August 25 2025, I emailed a copy of the **Sentencing Memorandum**

| | |
|---|---|
| ☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows: | ☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows: |
| ☐ By hand delivery, addressed as follows: | ☒ By Via Email, as follows: |
| ☐ By messenger, as follows: | ☐ By Federal Express, as follows: |

Robert C. Hsu
robert@lexintlaw.com

at his last known email addresses.

This Certificate is executed on August 25, 2025, at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/
Cynthia Avila-Sandoval
Legal Assistant